UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ILLINOIS CENTRAL RAILROAD
COMPANY,
    Plaintiff,                           No. 3:10-00197
v.                                        JUDGE SHARP

TENNESSEE DEPARTMENT OF
REVENUE and REAGAN FARR,
Commissioner of Revenue of the State
of Tennessee,
    Defendants.

## STIPULATED FACTS

Pursuant to this Court's Order entered on April 27, 2012, counsel submit the following stipulated facts. The parties reserve the right to object on grounds of relevancy to the stipulations below.

1.    Plaintiff Illinois Central Railroad Company ("ICRR") is an Illinois corporation with its principal offices in Homewood, Illinois. ICRR is engaged in interstate commerce as a common carrier by railroad. (Complaint, ¶ 5.)

2.    ICRR is the corporate holding company for some of the U.S. properties of Canadian National Railway and is the entity that pays taxes in Tennessee. ICRR does business under the trade name CN, and CN is sometimes used to refer to the Plaintiff in this case.

3. The Tennessee Department of Revenue ("Department") is the department of the State of Tennessee charged with the responsibility to administer and collect sales and use taxes within Tennessee. Tenn. Code Ann. § 67-1-101(b).

4. The Department is also charged with the responsibility to administer and collect motor fuel taxes within Tennessee. Tenn. Code Ann. § 67-6-101(b).

5. Defendant Commissioner of Revenue of the State of Tennessee ("Commissioner") is named in this action in his official capacity only. The Commissioner exercises general supervision over administration of the assessment and collection of sales and use taxes and motor fuel taxes in Tennessee.

6. The Tennessee Department of Transportation ("TDOT") is charged with building and maintaining public roads in Tennessee.

7. Cars, motorcycles, trucks--large and small, cyclists, and pedestrians use roads.

8. Generally, Tennessee imposes a tax on the sale, consumption, and use of tangible personal property in Tennessee. *See* Tenn. Code Ann. § 67-6-101 *et seq*.

9. The sales tax is collected by the seller at retail from the purchaser and paid over to the Commissioner by the seller. *See* Tenn. Code Ann. §§ 67-6-502 - 504.

10. Tennessee imposes a tax on the use, consumption, or storage for use or consumption of tangible personal property unless the sales tax on such property has been paid. Tenn. Code Ann. §§ 67-6-201(2) and (5), 67-6-202, and 67-6-203.

11. Railroads are subject to sales or use tax on either their purchase or consumption or use of diesel fuel in Tennessee. For years 2006 to the present, the tax is imposed by the State at the rate of 7% of the retail price. (Complaint, ¶ 11.)

12. ICRR holds a direct pay permit issued by the Department and pays state sales and use taxes upon its purchase of diesel fuel within this State directly to the Commissioner.

13. The principal competitors to rail carriers in the transportation of property in interstate commerce in the State of Tennessee are on-highway motor carriers of property in interstate commerce ("motor carriers"). (Complaint, ¶ 13.)

14. Water carriers are secondary competitors to rail carriers in the transportation of property in interstate commerce in Tennessee.

15. Motor carriers are exempt from the Tennessee sales and use tax imposed by chapter 6 of Title 67 on the purchase or consumption of diesel fuel in the State of Tennessee. *See* Tenn. Code Ann. § 67-6-329(a)(2).

16. Water carriers are not exempt from the sales and use tax imposed by chapter 6 of Title 67 on their purchase or consumption of diesel fuel in the state of Tennessee. In 2007 - 2009, TDOT reported that it received less than $100,000 in

sales and use taxes from water carriers. (Multimodal Transportation Alternatives Status 2007 Annual Report, p. 4-4; Multimodal Transportation Status 2008 Annual Report, p. 4-3; TDOT Multimodal Transportation Resource Division 2009 Annual Report, p. 4-4).

17. Tennessee, along with the other 47 contiguous states and bordering Canadian provinces, is a party to the International Fuel Tax Agreement ("IFTA") the purpose of which is to simplify the collecting and reporting of taxes on motor fuel used by motor carriers operating in more than one jurisdiction.

18. IFTA requires that the fuel use tax imposed by member jurisdictions be measured by the consumption of fuel in a motor vehicle. *See* 49 U.S.C. § 31701(2).

19. The standard IFTA tax return shows tax rates for each member jurisdiction in terms of per-gallon or per-liter taxes. (*See* Rowen Depo., Exh. 4).

20. Fuel costs incurred in the transportation of property in interstate commerce are a significant annual operating expense of both rail carriers and motor carriers. For the years 2005 through 2010, fuel costs as a percentage of total operating expenses for railroads were 16.5, 19.8, 20.9, 25.8, 15.3 and 18.5 respectively. (Railroad Facts 2011, p. 61).

21. The State of Tennessee has no control over the price of diesel fuel.

N CWS 887945 v3
2916107-000001 05/29/2012

22. The Surface Transportation Board (STB) classifies freight railroads into three classifications -- Class I, those with at least $398.7 million in operating revenue -- Class II, those with $31.9 million to $398.7 million in operating revenue -- Class III, those with less than $31.9 million in operating revenue. These thresholds are adjusted annually for inflation. The Class I railroads account for the majority of the U.S. rail freight activity, and since 1980 have been the only railroads required to report financial and operating information to the STB. Six Class I railroads operate in Tennessee. (Railroad Facts 2011, p. 3)

23. ICRR is a "common carrier by railroad" within the meaning of Section 306(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976, 49 U.S.C. § 11501. (Complaint, ¶ 18.)

24. Motor carriers pay a motor fuel tax totaling 18.4¢ a gallon. Tenn. Code Ann. § 67-3-202 - 205. Under Tenn. Code Ann. § 67-3-203 and 204, 1¢ of the 18.4¢ is a special privilege tax and .4¢ of the 18.4¢ is an environmental assurance fee. Approximately 70% of the motor fuel taxes collected from motor carriers are allocated to the highway fund, which is allocated to TDOT. Approximately 28% is allocated to cities and counties and designated for use on roads. Approximately 2% is allocated to the general fund.

25. In addition to the sales and use tax, railroads also pay the 1¢ and .4¢ tax imposed under Tenn. Code Ann. § 67-3-203 and 204.

5

26. In the tax years 2006 through 2010, ICRR paid the following amounts of Tennessee sales tax on its diesel fuel:

|      |            |
|------|------------|
| 2006 | $1,838,217 |
| 2007 | $1,839,288 |
| 2008 | $2,745,049 |
| 2009 | $1,341,981 |
| 2010 | $1,689,664 |

[Defendants are not bound, in any other proceeding, by the amounts shown in Stipulation 26.]

27. In the tax years 2006 through 2010, ICRR paid the following amounts of Tennessee state and local sales tax on track material:

|      |          |
|------|----------|
| 2006 | $635,168 |
| 2007 | $826,606 |
| 2008 | $990,641 |
| 2009 | $401,040 |
| 2010 | $283,971 |

[Defendants are not bound, in any other proceeding, by the amounts shown in Stipulation 27.]

28. In the tax years 2006 through 2010, ICRR paid the following amounts of property tax to cities and counties in Tennessee on its track structure, right of way, and signals:

| | |
|---|---|
| 2006 | $1,885,344 |
| 2007 | $2,148,995 |
| 2008 | $2,418,641 |
| 2009 | $2,581,751 |
| 2010 | $2,517,645 |

[Defendants are not bound, in any other proceeding, by the amounts shown in Stipulation 28.]

29. ICRR owns its track and rights-of way. No other railroad can operate trains over ICRR's track or rights-of-way without Plaintiff's permission.

30. ICRR's total employment at work locations in Tennessee was 496 employees as of December 31, 2011. The employment numbers were substantially the same during the years 2005 - 2010 as during 2011. (Rogers Depo., p. 38).

31. Under Tennessee law, any county or municipality, or any combination thereof, may establish Rail Authorities, for the purpose of maintaining railroad services within the governmental jurisdiction establishing the authority. A number of Rail Authorities have been established in Tennessee, and it is these Rail Authorities that receive grants from the TDOT of funds from the Transportation

Equity Trust Fund for short line track and bridge rehabilitation. *See* Tenn. Code Ann. § 7-56-201.

32.     ICRR has direct connections with two of the short line railroads in Tennessee. Eleven other short lines have traffic which may originate or terminate on a Tennessee short line, but interconnect through another Class I carrier with the ICRR somewhere out of state.

33.     Plaintiff owns and operates an intermodal facility in Memphis, Tennessee. Approximately 20 - 25% of Plaintiff's business is intermodal -- containers that can move by rail, vessel, barge, or truck, or trailers that can move by rail or truck. (Jakubowski Depo., p. 16, l. 24 - p. 20, l.23).

34.     Every intermodal container or trailer that Plaintiff handles travels by truck at some point on its route. (Jakubowski Depo., p. 15, l.24 through p. 20, l. 23).

35.     Other products that move by rail, for example, automobiles, may also move by truck at some point along the route.

36.     Plaintiff has the ability to route cars on the open network of all Class I and all short line railroads in Tennessee (Jakubowski Depo., p. 41, l. 15 - p. 42, l.3).

37.     Railroads pay to construct and maintain their own rights-of-way. (Jakubowski Depo., p. 14, ll. 1-7).

38. The Transportation Equity Trust Fund is a fund that was established in fiscal year 1987-1988, and is described in Tenn. Code Ann. §67-6-103(b)(1). The Transportation Equity Trust Fund is a fund to which is directed the sales and use tax paid on fuel purchased or used by aeronautics, railroads, and barges, the railroad portion of which is granted to Rail Authorities for the short line railroad track and bridge rehabilitation programs administered by TDOT. (Tennessee Rail System Plan Policy and Procedures Manual, page 2, Coleman Depo. Exh. 4).

39. Since July 1, 1987, sales and use tax revenues at the rate of 5 1/2 % of the purchase price generated from the purchase or use of diesel fuel by all railroads have been allocated to the Transportation Equity Trust Fund and have been used by TDOT for the short line railroad track and bridge rehabilitation program. Revenues from later increases in the sales and use tax rate from 5 1/2 % to 7% have been allocated to the general fund and/or for educational purposes. Tenn. Code Ann. § 67-6-103(b) and (c).

40. On occasion, the General Assembly has allocated supplemental funds to the Transportation Equity Trust Fund.

41. The needs assessment is an engineering study to determine costs to bring short line tracks and bridges up to a desired engineering standard, including the capability to handle car loads of 286,000 pounds. (Collier Depo., p. 27; Coleman Depo. Exh. 3, pp. 28, 37). The needs assessment studies are not based on

the economic viability of the short lines. (Collier Depo., p. 27 and Linn 11/16/2011 Depo., p. 27). The existing short lines' track is capable of handling 286,000 pound cars; the rehabilitation standard is to allow the operation of trains without speed restrictions. (Linn 11/16/2011 Depo., p. 30).

42. The initial needs assessment studies for rehabilitation were performed in the early 1990s and were supplemented periodically through 2005. In fiscal year 2003-2004, identified total needs for the short line Rail Authorities were $151,198,589.27. (Coleman Depo. Exh. 1). After a 2005 update of the track needs assessment study, by fiscal year 2007-2008, the total needs for the short line Rail Authorities were stated to be $294,713,386. (Coleman Depo. Exh. 1).

43. TDOT does not gather financial information relative to the short line operator's or short line Rail Authorities' revenues or profits. (Collier Depo. Exh. p. 32 )

44. The Transportation Equity Trust Fund, including rail rehabilitation funds, are set up to support the local communities and economic development in those communities. (Collier Depo., p. 31).

45. Twenty-two short line Rail Authorities receive funds from the Transportation Equity Trust Fund in proportion to their needs as determined by track and bridge needs studies.

46. Rehabilitation spending for the TennKen Railroad Authority totaled $597,881 in 2009. (2009 Multimodal Transportation Report, p. 3-45; Collier Depo. p. 29-30).

47. According to a TDOT financial report, the amounts spent from all sources contemplated by the report from 1980, through 2011, for track and bridge rehabilitation by the TennKenn Railroad Authority was $19,133,247.58. Of that amount, $15,109,352.56 was from the Transportation Equity Trust Fund (Coleman Depo. Exh. 3, Bates # 001750).

48. The West Tennessee Railroad Company operates two different segments of track. The "Kenton Branch" from Kenton, Tennessee to Carroll, Tennessee (near Jackson), is owned by the West Tennessee Railroad Company, which purchased it from the Illinois Central Railroad in 1984. Transportation Equity Trust Fund allocations to the Kenton Branch are administered by the Gibson County Railroad Authority. The line from Fulton, Kentucky to Corinth, Mississippi is owned by Norfolk Southern Railroad Company, which leased it to the West Tennessee Railroad Company in 2001. Transportation Equity Trust Fund Allocations to the Fulton-to-Corinth line are administered by the West Tennessee Railroad Authority. Each branch has its own rehabilitation funding needs documented by TDOT. (Linn 5/16/2012 Depo. p.22; 2009 Multimodal Transportation Report, pp. 3-17 and 3-49)

49. According to a TDOT financial report, the amounts spent, from all sources contemplated by the report, from 1984 through 2011, for track and bridge rehabilitation by the Gibson County Railroad Authority was $17,278,084.12. Of that amount, $13,303,145 was from the Transportation Equity Trust Fund (Coleman Depo. Exh. 3, Bates #1719). Similar spending by the West Tennessee Railroad Authority from 2002 through 2011, was $15,133,073.32. Of that amount, $12,271,465 was from the Transportation Equity Trust Fund (Coleman Depo. Exh. 3, Bates #1756).

50. Based on the most current track and bridge needs assessments, the West Tennessee Railroad Company, through the Gibson County Railroad Authority and the West Tennessee Railroad Authority, is entitled to a distribution of 18.9% of the Transportation Equity Trust Fund collections annually. (Linn 5/16/2012 Depo., p. 23).

51. Plaintiff has pending in the Chancery Court for Davidson County, Tennessee a refund action seeking a refund of all sales and use taxes paid on its purchases of diesel fuel in Tennessee from 2005 through 2010.

52. Transportation Equity Trust Fund receipts for use in the short line track and bridge rehabilitation program from 2006 through 2010 total $60,965,691.54 (Bates #1844).

Respectfully submitted,

James W. McBride
jmcbride@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ
920 Massachusetts Avenue, NW, Suite 900
Washington, DC 20001
Telephone: (202) 508-3467
Fax: (202) 508-3402

Stephen D. Goodwin (006294)
sgoodwin@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ
First Tennessee Bank Building
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Telephone: (901) 577-2141
Fax: (901) 577-0734

Carolyn W. Schott (021811)
cschott@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ
Baker Donelson Center
211 Commerce Street, Suite 800
Nashville, TN 37201
Telephone: (615) 726-7312
Fax: (615) 744-7312

By: s/Carolyn W. Schott
    Attorneys for Plaintiff

13

N CWS 887945 v3
2916107-000001 05/29/2012
Case 3:10-cv-00197  Document 45  Filed 05/29/12  Page 13 of 14 PageID #: 204

Robert E. Cooper, Jr. (010934)
Attorney General and Reporter
Talmage M. Watts (015298)
Assistant Attorney General
Office of the Attorney General, Tax Division
P.O. Box 20207
Nashville, TN 37202-0207
Telephone:  (615) 741-6431
Fax:             (615) 532-2571

By: s/Talmage M. Watts (with permission)
    Attorneys for Defendants