# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

ILLINOIS CENTRAL RAILROAD
COMPANY,
      **Plaintiff,**               **No. 3:10-00197**

**v.**                         **JUDGE SHARP**


TENNESSEE DEPARTMENT OF
REVENUE and REAGAN FARR,
Commissioner of Revenue of the State
of Tennessee,
      **Defendants.**

## PLAINTIFF ILLINOIS CENTRAL RAILROAD COMPANY'S PRETRIAL BRIEF

## I.
## INTRODUCTION

Section 306(1) of the Railroad Revitalization and Regulatory Reform Act of 1976 (hereinafter sometimes referred to as "Section 306" or the "4-R Act"), codified at 49 U.S.C. § 11501, prohibits state and local governments from discriminating against railroads in the matter of taxation.[1]  Furthermore, Section 306(2), 49 U.S.C. § 11501(c), specifically empowers the federal district courts to grant such injunctive relief and declaratory judgment as may be necessary

_____

[1] A copy of Section 306 is attached to the Complaint and appears as Attachment A to this Brief.

to prevent, restrain, and terminate any acts in violation of Section 306. Plaintiff Illinois Central Railroad Company ("ICRR") filed this action on February 26, 2010, alleging that the assessment, levy, and collection of a sales and use tax on ICRR's purchase or use of diesel fuel in Tennessee violates Section 306.

## II.
## FACTS

Under Chapter 6 of Title 67 of the Tennessee Code, Tennessee imposes a tax on the sale, consumption, and use of tangible personal property in Tennessee. Although it is collected from retailers, the Tennessee sales tax is a direct tax on the retail consumer, and is precollected by retailers insofar as it can be done. *See* Tenn. Code Ann. § 67-6-502. Complementary to the sales tax, Tennessee imposes a use tax on the storage, use or consumption of tangible personal property in Tennessee. *See* Tenn. Code Ann. § 67-6-201(2) and (5).[2] Under Tennessee's taxing scheme, railroads are subject to sales or use tax on their purchase or consumption or use of diesel fuel in Tennessee. The tax is imposed by the state at the rate of 7%. Tenn. Code Ann. § 67-6-202(1).

---

[2] Sales and use taxes are "complementary" taxes. The purchaser either pays the "sales" tax to the vendor at the time of purchase, or pays a "use" tax at the same rate when the article is used or consumed in Tennessee if a sales tax was not paid. Because ICRR pays the tax on its fuel directly to the Tennessee Department of Revenue (and not to its vendors) as it purchases the fuel, it is a sales tax. For ease of reference, ICRR in its brief will sometimes refer to the sales and use taxes jointly as the "sales tax."

2

The principal competitors of rail carriers are on-highway motor carriers of property in interstate commerce ("motor carriers"). Motor carriers do not pay sales or use tax on the purchase or consumption of diesel fuel in the State of Tennessee. *See* Tenn. Code Ann. § 67-6-329(a)(2).[3] Fuel costs incurred in the transportation of property in interstate commerce are a major annual operating expense of both rail carriers and motor carriers. Because of the tremendous volume of diesel fuel purchased in Tennessee by ICRR, its sales tax liability is substantial.

## III.
## SECTION 306

Section 306 was enacted as part of a comprehensive congressional plan to revitalize the nation's railroads and to strengthen the United States' transportation system. Prior to 1976, rail carriers had been subject to discriminatory state and local taxation for decades. Congress surveyed the nature and impact of the discrimination in 1961. *See* S. Rep. No. 87-445, at 449-66 (1961). Congress concluded that rail carriers were "'easy prey for State and local tax assessors' in that they are 'nonvoting, often nonresident, targets for local taxation,' who cannot easily remove themselves from the locality." <u>W.Air Lines, Inc. v. Bd. of Equalization,</u>

---

[3] The sales tax imposed under Chapter 6 of Title 67 and the motor fuel tax imposed under Chapter 3 of Title 67 are two completely separate and distinct taxes. In fact, some states do not exempt motor fuel used for highway purposes from the imposition of their sales and use taxes. For example, in Illinois, the general 6.25% sales and use tax rate is applicable to the purchase and use of motor fuels on the highway. This is in addition to the highway use tax of 21.5 cents per gallon imposed on diesel fuel for highway use. *See* 35 Ill. Comp. Stat.. Ann. 505/2 (West 2012) and 35 Ill. Comp. Stat. Ann. 120/2-10 (West 2012).

3

480 U.S. 123, 131 (1987)(quoting S. Rep. No. 91-630, at 3 (1969)). After more than 15 years of investigation, various congressional committees and study groups concluded that state tax discrimination against railroads was pervasive; that state laws which guaranteed equal tax treatment for railroads had not been observed; and that state administrative and judicial remedies had not afforded railroads an efficient and effective means of obtaining relief from discriminatory state taxation. Congress thereafter enacted Section 306 to establish a clear federal policy against discriminatory state taxation of railroads and to create an efficient federal judicial remedy to enforce such a policy against the states. *See* Southern Railway Co. v. State Board of Equalization, 715 F.2d 522, 528 (11th Cir. 1983), *cert. denied*, 465 U.S. 1100 (1984); Atchison, Topeka & Santa Fe Ry. Co. v. Board of Equalization, 795 F.2d 1442, 1443 n.2 (9th Cir. 1986), *vacated on other grounds*, 828 F.2d 9 (9th Cir. 1987), and authorities cited therein.

Section 306 confers jurisdiction upon district courts of the United States, notwithstanding 28 U.S.C. § 1341, to "grant such mandatory or prohibitive injunctive relief, interim equitable relief, and declaratory judgments as may be necessary to prevent, restrain or terminate any acts in violation of [Section 306]." *See* Section 306(2), 49 U.S.C. § 11501(c).

Congress enacted Section 306 as part of the 4-R Act's purpose "to provide the means to rehabilitate and maintain the physical facilities, improve the

4

N CWS 889872 v3
2916107-000001  05/29/2012

operations and structure, and restore the financial stability of the railway system of the United States." 90 Stat. at 33. Congress sought to "foster competition among all carriers by railroad and other modes of transportation," 45 U.S.C. § 801(b)(2), and in particular to prevent discriminatory state and local taxation of railroads.

**IV.**
**UNDER SECTION 306(1)(d), THE IMPOSITION OF TENNESSEE'S SALES AND USE TAX ON PLAINTIFF'S PURCHASE AND USE OF LOCOMOTIVE DIESEL FUEL IS DISCRIMINATORY**

49 U.S.C. § 11501(b) establishes four prohibited acts by state and local governments:

1. excessive assessment of railroad property for property tax purposes [§ 11501(b)(1)];

2. levying or collecting a tax on an excessive property tax assessment [§ 11501(b)(2)];

3. taxing railroad property at a higher rate than other business property [§ 11501(b)(3)]; and

4. imposing another tax that discriminates against a railroad [§ 11501(b)(4)].

The first three prohibitions concern property taxes. On the other hand, the fourth prohibition, Section 11501(b)(4), is not limited to property taxes, and applies to a variety of non-property taxes as well as property taxes. *See, e.g.,* Alabama Great Southern Railroad Co. v. Eagerton, 663 F.2d 1036, 1040 (11th Cir.

5

1981). This case, like the case precedents in which taxes on diesel fuel have been challenged, is brought pursuant to the fourth prohibition, forbidding "the imposition of any other tax which results in discriminatory treatment of a common carrier by railroad. . . " [Section 306(1)(d)], or as stated in the codification, "[i]mpos[ing] another tax that discriminates against a rail carrier . . ." 49 U.S.C. § 11501(b)(4).[4] All of the cases involving the taxation of railroad diesel fuel discussed in this brief were decided under Section 11501(b)(4).

The purpose of this PreTrial Brief is to review the development of the law in cases under Section 306(1)(d), where railroads challenged the imposition of taxes on their purchase and use of diesel fuel. This review will provide the Court with the judicial context in which this case arises -- from the Supreme Court's decision in Dept. of Revenue of Oregon v. ACF Industries, Inc., 510 U.S. 332, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994), through the Supreme Court's decision specifically addressing discriminatory diesel fuel taxes in CSX Transportation, Inc. v. Alabama Dept. of Revenue, 131 S.Ct. 1101, 179 L.Ed.2d 37 (2011). All of the current case law supports the enjoining of taxes imposed on railroads' purchase and use of diesel fuel where their principal competitors, motor carriers, do not pay the same tax on their purchase of diesel fuel.

---

[4] It is well-established that the codification of Section 306 did not effect any substantive changes to the reach of its prohibitions. *See* CSX Transportation, Inc. v. Alabama Dept. of Revenue, 131 S.Ct. 1101 at 1105, note 1; 179 L.Ed.2d 37 (2011).

N CWS 889872 v3
2916107-000001  05/29/2012

# V.
## OREGON DEPARTMENT OF REVENUE V. ACF

Because the decision of the United States Supreme Court in <u>ACF</u> has been misinterpreted by lower courts, this brief will begin with a discussion of <u>ACF</u>. The Supreme Court in the <u>CSX</u> case correctly interpreted <u>ACF</u> as being limited to property taxes. <u>ACF</u>'s limited holding is important to the analysis of those cases that have misinterpreted it.

Under Oregon's ad valorem tax scheme, all real and personal property was subject to tax unless expressly exempt. Various classes of business personal property had been exempted by the legislature. Railroad cars were not among the types of property exempt by the Oregon legislature, leading to a Section 11501(b)(4) challenge culminating in the decision in <u>ACF</u>. Construing definitional sections of Section 11501 which were pertinent only to property tax discrimination, the Supreme Court held that a state may grant exemptions from a "generally applicable ad valorem property tax without subjecting the taxation of railroad property to challenge under the relevant provision of the 4-R Act, § 306(1)(d), 49 U.S.C. § 11503(b)(4)." *See* 510 U.S. at 335.

Some courts subsequent to <u>ACF</u> began to erroneously apply its ruling to non-property tax cases, including some Section 11501(b)(4) cases challenging the taxation of railroad diesel fuel. As will be demonstrated, these cases failed to restrict the ruling of <u>ACF</u> to property tax cases, and instead erroneously concluded

7

that states could tax railroad diesel fuel while exempting railroad competitors from generally applicable sales taxes, free from the prohibitions of Section 11501(b)(4).

## VI.
## THE ARIZONA AND NORFOLK SOUTHERN DECISIONS

In Atchison, Topeka & Santa Fe Railway Co. v. State of Arizona, 78 F.3d 438 (9th Cir.), *cert. denied*, 519 U.S. 1029 (1996), the Ninth Circuit considered a challenge under Section 11501(b)(4) to the application of Arizona's "transaction privilege tax and use tax." The tax was imposed at a rate of 5% on the sale of goods and services occurring in the state, but it was applicable only to 17 classifications of industrial and commercial taxpayers. The "transporting classification" (including railroads) was one of the types of businesses subject to the tax, except that motor carriers were exempt from the "transporting classification" (and thus exempt from the tax) because they were taxed under a separate scheme of taxation. The Ninth Circuit held that the railroad could not challenge alleged "discriminatory exemption" because of the Supreme Court's decision in ACF. Acknowledging that ACF specifically addressed only property tax exemptions, the Ninth Circuit held that "the logic advanced by the Supreme Court is equally applicable to the context of transaction privilege tax and use tax exemptions." *See* 78 F.3d at 443. Because Arizona's transaction privilege tax and use tax was a "generally applicable tax," the court held that its imposition on railroads was not discriminatory.

8

In addition to misinterpreting ACF, the Ninth Circuit also used the wrong comparison class. One panel member filed a powerful dissenting opinion urging that the majority's failure to analyze the case using a proper comparative class of railroad competitors was erroneous, concluding:

> The broad comparison class overlooks the obvious point that a tax imposed on rail carriers, but not on motor carriers, is discriminatory in the most basic sense of the word – it treats those engaged in an identical activity differently. In this instance, it treats those involved in the transportation of goods or passengers differently, and the Railroads suffer a dramatic competitive disadvantage. This is a result that the 4-R Act cannot allow.

See 78 F.3d at 446 (Nielsen J., dissenting).

Most recently, a misplaced reliance on ACF led to an erroneous result in a diesel fuel case in Norfolk Southern Railway Co. v. Alabama Dept. of Revenue, 550 F.3d 1306 (11th Cir. 2008) abrogated by CSX Transportation, Inc. v. Alabama Dept. of Revenue, supra, 131 S.Ct. 1101 (2011). In Norfolk Southern, a case almost identical to the instant case, the Eleventh Circuit affirmed the district court's denial of a preliminary injunction, relying exclusively on the Supreme Court's decision in ACF. As the Ninth Circuit had done in Atchison, Topeka & Santa Fe, the Eleventh Circuit erroneously assumed that the ruling of the Supreme Court in ACF – a property tax case – applied with equal force when considering the discriminatory effect of exemptions in a sales and use tax statutory scheme. Although neither party had briefed ACF in depth, the Eleventh Circuit nevertheless

9

seized upon that Supreme Court decision to hold that a railroad cannot challenge the discriminatory impact of exemptions in a sales and use tax scheme. As the Ninth Circuit had done in Atchison, Topeka & Santa Fe, the Eleventh Circuit found the Supreme Court's analysis in ACF "equally applicable" to a sales and use tax case. *See* 550 F.3d at 1314. Of course, as will be discussed subsequently in this brief, the Eleventh Circuit's decision in Norfolk Southern was completely repudiated and abrogated by the Supreme Court's decision in CSX.

## VII.
## LOHMAN AND ITS PROGENY

The Eighth Circuit Court of Appeals, unlike the Ninth Circuit Court of Appeals, did not allow the Supreme Court's decision in ACF to affect the judicial acceptance that a tax on railroad diesel fuel not imposed on its competitors violates Section 11501(b)(4). In Burlington Northern Santa Fe Co. v. Lohman, 193 F.3d 984 (8th Cir. 1999), *cert., denied,* 529 U.S. 1098 (2000), the Eighth Circuit decided a case on facts very similar to the instant case before this Court. Missouri, as does Tennessee, imposes its sales and use tax on railroad diesel fuel, while exempting the diesel fuel of motor carriers. Rejecting the Ninth Circuit's analysis in Atchison, Topeka & Santa Fe, the Eighth Circuit determined that the selection of the comparison class "should be appropriate to the type of tax and discrimination challenged in a particular case." *See* 193 F.3d at 986. The Eighth Circuit noted that railroad companies are subject to a "generally imposed non-property tax, while

10

their direct competitors are not."  Given that set of facts, using a broad comparison class of "other commercial and industrial taxpayers" would place the railroads at a competitive disadvantage that would defeat the purpose of Section 306, which is railroad financial stability.  The Eighth Circuit relied heavily on the dissenting opinion in the Ninth Circuit's decision, and further cited favorably a decision by the Iowa Supreme Court voiding a "special excise tax" based on the consumption of railroad fuel.  *See* Atchison, Topeka & Santa Fe Ry.Co. v. Bair, 338 N.W.2d 338 (Iowa 1983).  Finding that within the competitive mode class, only railroads paid the sales and use tax, and that the barges and trucks were exempt, the Eighth Circuit directed the entry of declaratory and injunctive relief in favor of Burlington Northern.  The Eighth Circuit certainly found the Supreme Court's ruling in ACF to be no impediment to its conclusion.  In fact, it cites ACF on two occasions in its opinion.  *See*  193 F.3d at 986, and n. 2.

The Eighth Circuit re-affirmed the Lohman rationale in Union Pacific Railroad Co. v. Minnesota Dept. of Revenue, 507 F.3d 693 (8th Cir. 2007). Minnesota, like Missouri and Tennessee, attempted to impose a sales and use tax on railroad diesel fuel, when the motor carriers were exempt.  Notwithstanding the fact that water carriers apparently were subject to the same sales and use tax, the

11

imposition of the sales tax on railroad diesel fuel was held to violate Section 11501(b)(4).[5]

Lohman was followed by the district court in Kansas City Southern Railway Co. v. Bridges, 2007 WL 977552 (W.D. La., filed March 30, 2007). This is another case with facts very similar to the instant case. Following the reasoning of the Eighth Circuit in Lohman, that court held that the proper comparison class was the class of railroad competitors, and that the exemption of railroad competitors from the sales and use tax voided the application of the sales and use tax to railroad diesel fuel.

Thus, until recently, there was tension among the courts as to whether the Supreme Court's ACF decision affected the analysis in a non-property tax case. The Supreme Court resolved that tension in CSX.

## VIII.
## THE SUPREME COURT DECISION IN CSX

In 2008, CSX Transportation, Inc. brought suit in Alabama challenging Alabama's imposition of sales tax on railroad diesel fuel when the same tax was not imposed on motor carriers. That is the case that ultimately went to the U.S.

---

[5] The Eighth Circuit's decision in Union Pacific, and the resulting injunction of the sales tax on railroad diesel fuel, effectively abrogated a contrary ruling by the Minnesota Supreme Court in Burlington Northern Railroad Co. v. Commissioner of Revenue, 606 N.W.2d 54 (2000). Although that court had appropriately selected the competitive comparison class, that court had held that the imposition of the sales and use tax on water carriers took the case out of the reach of Lohman, and that the sales and use tax on diesel fuel used by rail carriers was not invalid under Section 11501(b)(4).

N CWS 889872 v3
2916107-000001  05/29/2012

Supreme Court and is now back at the district court on remand. <u>CSX</u> <u>Transportation, Inc. v. Alabama Dept of Revenue</u>, No. 2:08-cv-0655-AKK (N.D. Ala. trial completed Apr. 25, 2012).

The district court in <u>CSX</u> issued a preliminary injunction enjoining the collection of the tax on July 8, 2008. In its Memorandum Opinion on the plaintiff's motion for preliminary injunction (copy attached hereto as Attachment B), the district court set forth the facts and controlling case law constituting reasonable cause to believe that the imposition of Alabama sales and use tax on the purchase and consumption of diesel fuel by CSXT in Alabama would violate the 4-R Act. The court reasoned that the proper class for comparison to railroads to determine discrimination is the class of competitive modes of commercial transportation, *i.e.*, motor and water carriers, relying expressly on <u>Lohman</u>. Further, relying on <u>Lohman</u>, the court found reasonable cause to believe that CSXT's payment of a sales tax on diesel fuel which is not paid by its competitors would violate Section 306. After <u>Norfolk Southern</u> was decided, the Alabama district court dissolved the preliminary injunction. CSXT appealed to the Eleventh Circuit and the Eleventh Circuit affirmed. CSXT sought *certiorari*.

Noting the conflicts between the Eighth Circuit's decision in <u>Lohman</u>, the Eleventh Circuit's decision in <u>Norfolk Southern</u>, and the Ninth Circuit's decision in <u>Atchison, Topeka & Santa Fe</u>, the Supreme Court granted *certiorari* to review the

Eleventh Circuit's decision in <u>CSX</u>, which had been based on <u>Norfolk Southern</u>.  In its decision, the Supreme Court made clear that its ruling in <u>ACF</u> was limited to property tax exemptions, and not exemptions in other taxing schemes such as the sales and use tax, thus effectively abrogating both <u>Norfolk Southern</u> and <u>Atchison, Topeka & Santa Fe</u>.  The Court explained in great detail that its decision in <u>ACF</u> was based on the particular language in Section 11501(a) containing the definitions for the comparison class <u>in property tax cases</u>, and did not affect the generally recognized rule that "tax schemes with exemptions may be discriminatory."  *See* 131 S.Ct. at 1109.  Accordingly, in support of the Eighth Circuit and rejecting the Ninth and Eleventh Circuits, the Supreme Court held that "a state excise tax that applies to railroads but exempts their interstate competitors is subject to challenge under subsection (b)(4) as a tax that discriminates against a rail carrier."  *Id.*  The Court's opinion also rejected the dissenters' analysis, based on <u>ACF</u>, that a railroad can prevail in a non-property tax case only if it shows that the tax has "targeted" or "singled out" railroads for discriminatory treatment.  *Id*., n. 8.

On remand, the Alabama district court reinstated the original preliminary injunction.  The case on remand was tried before Judge Kallon on April 25, 2012.  It will be fully submitted on June 8, 2012.

N CWS 889872 v3
2916107-000001  05/29/2012

# IX.
## CURRENT STATE OF THE LAW

Lohman and its progeny represent the state of the law in diesel fuel cases. Although the Supreme Court in CSX did not rule upon the proper comparison class, the precedents unaffected by a mis-reading of ACF have conclusively established that the class of competing transportation modes is the appropriate class. The overwhelming weight of authority holds that the class of competitive modes of transportation is the appropriate comparison class where a tax on railroad diesel fuel that is not imposed on the fuel of competing transportation modes is challenged. *See, e.g.*, Union Pacific Railroad Co. v. Minnesota Dept. of Revenue, 507 F.3d 693 (8th Cir. 2007); Burlington Northern, Santa Fe Ry. Co. v. Lohman, 193 F.3d 984 (8th Cir. 1999), *cert. denied*, 529 U.S. 1098 (2000); Kansas City Southern Railway Co. v. Bridges 2007 WL 977552 (W. D. La. March 30, 2007). In fact, ICRR does not understand the defendants to be arguing that the comparison class is anything other than the competitive mode class.

It appears that the only issue is whether the defendants may defend the imposition of the sales tax on railroad diesel fuel by relying on an allegedly "comparable" motor fuel tax imposed on the motor carriers. Unfortunately for the defendants, they can cite no authority for this type of "relative burdens" test. It is clear that this type of analysis has been rejected by every other court that has considered this type of discriminatory tax case.

15

In Arizona Public Service Co. v. Snead, 441 U.S. 141 (1979), the Supreme Court considered the interpretation of a federal statute, 15 U.S.C. § 391, which prohibits states from imposing taxes on the generation or transmission of electricity that discriminate against out-of-state consumers. Several public utility companies challenged the legality of the state energy tax on electricity generated within the state but sent to consumers out of state. The defendants in that case urged the Supreme Court to examine the state's total tax structure to determine whether the state in fact imposed a greater tax burden on electricity sent out of state. More particularly, the defendants asked the Court to take into account the fact that there was a tax imposed at a higher rate on electricity generated for intrastate use. The Supreme Court rejected that analysis concluding: "to look narrowly to the type of tax the federal statute names, rather than to consider the entire tax structure of the state, is to be faithful not only to the language of the statute, but also to the expressed intent of Congress in enacting it." See 441 U.S. at 149-150.

Similarly, all precedents under Section 306(1)(d) require analysis only of the specific tax at issue – here, the sales and use tax – and have refused to look at the tax structure of the state. See, e.g., Kansas City Southern v. McNamara, 817 F.2d 368, 377-78 (5th Cir. 1987); Trailer Train Co. v. State Tax Commission, 929 F.2d 1300, 1303 (8th Cir.), cert. denied, 502 U.S. 856 (1991); Lohman, supra; Union Pacific, supra. Most recently, the district court in Louisiana refused an attempt to

16

consider the comparative impact of sales taxes on railroad diesel fuel and excise

taxes on motor carrier fuel.  *See* <u>Bridges</u>, *supra*, at p. 6.  Judge Hicks relied on the

following logic articulated by the Fifth Circuit:

> Once we start down the slippery slope of enjoining
> discriminatory taxes only to the extent that they exceed
> "equivalent" taxes by other taxing entities, we destroy the
> bright lines created by [Section 306] itself.  Furthermore,
> if we affirm the district court's partial injunction, we will
> consign every 4-R case to a trial on the merits like the
> one in this case – an unproductive "battle of the experts"
> on whether any taxes levied in the state are "equivalent,"
> and if so, which ones.
>
> ***
>
> We recognize that our conclusion is somewhat
> formalistic.  But the 4-R Act is formalistic.  And, again,
> we have faith in the abilities of the state tax collectors to
> reach the pockets of the railroads with taxes that are
> actually and formally fair.

*See* <u>Kansas City Southern Railway Co. v. McNamara</u>, *supra*, 817 F.2d at 379.

Any evidence of "relative tax burdens" should be rejected by this Court.

Although such an analysis is unnecessary, ICRR will present expert testimony that

the excise tax on motor carriers, which is in the nature of a dedicated user fee that

builds and maintains the highways used by the motor carriers, is not in any sense

"comparable" to the sales tax on ICRR's diesel fuel.  The excise tax results in an

important tangible benefit to the motor carriers in the form of a network of well-

maintained roads and bridges for the excise taxes they pay, while railroads must

acquire, build, maintain, and pay taxes on their rail network from their own

17

resources.  Such a tax system provides a distinct competitive advantage for the motor carrier industry relative to its largest competitor, the railroads.  This conclusion will be supported in this record by the expert opinion of Dr. Richard Mudge, as well as the authority of several court decisions.  *See* Atchison, Topeka & Santa Fe Ry. Co. v. Bair, *supra*, 338 N.W.2d at 347; Burlington Northern Railroad Co. v. Triplett, 682 F. Supp. 443, 446.

Should this Court accept the defendants' invitation to analyze taxes other than the sales tax and to engage in some type of "benefits and burdens" analysis, this Court will grow to appreciate why other courts have avoided the "thickets" of such an analysis.  *See* Burlington Northern v. City of Superior, *supra*, 932 F.2d at 1188.  As Judge Posner observed, it is "unrealistic to suppose that the overall burden of a state's tax system could be rationally evaluated by the methods of litigation. . . " *Id*. at 1187.  The Fifth Circuit thus summarized in McNamara:

> Determining the intrinsic economic fairness of a tax system to a particular taxpayer is a paradigm of the kind of polycentric problem for which courts are ill-suited.  In effect, we would have to determine the fairness of the tax system to each and every taxpayer in order to decide whether it is fair to any one of them.

*See* 817 F.3d at 377 (emphasis in original)(relying on a law review article citing judicial handicaps "with the process of evaluating the relative economic burden of taxes.")

N CWS 889872 v3
2916107-000001  05/29/2012

As the case law has developed, and with the demise of <u>ACF</u> as authority in a Section 11503(b)(4) diesel fuel case, the overwhelming weight of authority holds that:

    a)    the proper comparison class is the "competitive mode" class;

    b)    the court need not and should not look at other allegedly comparable taxes;

    c)    the court need not and should not engage in any "relative burdens" analysis urged by the defendants.

## X.
## <u>CONCLUSION</u>

When faced with the nearly identical tax scheme challenged in this case, the courts have unerringly held that the imposition of a sales tax on railroad diesel fuel violates Section 306(1)(d), 49 U.S.C. § 11501(b)(4). As stated in its Complaint, ICRR asks that this Court enter the following injunctive and declaratory relief, as authorized by Section 11501(c).

1.    That a declaratory judgment enter that the imposition of sales and use taxes authorized by Tennessee law on ICRR's purchases or consumption of diesel fuel for rail transportation purposes violates Section 306(1)(d), 49 U.S.C. § 11501(b)(4); and

N CWS 889872 v3
2916107-000001  05/29/2012

2.      That the Court enter an injunction permanently enjoining the defendants from assessing, levying, or collecting sales and use taxes on or from ICRR or on or from any person paying on behalf of ICRR on ICRR's purchase or consumption of diesel fuel for rail transportation purposes; and

3.      That the Court permanently enjoin the defendants from instituting any proceedings to assess, levy, or collect any amount of sales and use taxes, interest or penalties that the defendants might assert to be due and owing from ICRR on its purchase or consumption of diesel fuel for rail transportation purposes.

N CWS 889872 v3
2916107-000001  05/29/2012

Respectfully submitted,

James W. McBride
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, PC
920 Massachusetts Avenue, NW, Suite 900
Washington, DC 20001
Telephone:   (202) 508-3400
Fax:            (202) 508-3402

Carolyn W. Schott
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, PC
211 Commerce Street, Suite 800
Nashville, TN 37201
Telephone:   (615) 726-7312
Fax:            (615) 744-7312

Stephen D. Goodwin
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ
First Tennessee Building
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Telephone:   (901) 526-2000
Fax:            (901) 577-2303

By: s/Carolyn W. Schott
        Attorneys for Plaintiff

21

## CERTIFICATE OF SERVICE

I certify that the foregoing has been served upon the following by the CM/ECF electronic filing system or by depositing a copy thereof in the United States mail, properly addressed and postage prepaid, this 29th day of May, 2012.

Talmage M. Watts, Assistant Attorney General
State of Tennessee
Office of the Attorney General
P. O. Box 20207
Nashville, TN 37202-0207

By: s/Carolyn W. Schott
Attorneys for Plaintiff

N CWS 889872 v3
2916107-000001  05/29/2012