**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ILLINOIS CENTRAL RAILROAD** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 3:10-cv-00197** |
| | ) | |
| **v.** | ) | **Judge Sharp** |
| | ) | |
| **TENNESSEE DEPARTMENT OF** | ) | |
| **REVENUE and REAGAN FARR,** | ) | |
| **Commissioner of Revenue of the State** | ) | |
| **Of Tennessee,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This action is brought under Section 306(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976 ("Section 306" or the "4-R Act"), 49 U.S.C. § 11501(b)(4), which prohibits state and local governments from discriminating against railroads with respect to taxation. Plaintiff contends that the sales and use tax assessments imposed by the State are discriminatory because motor carriers are exempt from the tax, but rail carriers are not exempt. Plaintiff seeks injunctive and declaratory relief pursuant to Section 306.[1]

---

[1] Plaintiff asks (1) that a declaratory judgment enter that the imposition of sales and use taxes authorized by Tennessee law on ICRR's purchases or consumption of diesel fuel for rail transportation purposes violates Section 306(1)(d), 49 U.S.C. § 11501(b)(4); (2) that the Court enter an injunction permanently enjoining Defendants from assessing, levying, or collecting sales and use taxes on or from ICRR or on or from any person paying on behalf of ICRR on ICRR's purchase or consumption of diesel fuel for rail transportation purposes; and (3) that the Court permanently enjoin Defendants from instituting any proceeds to assess, levy, or collect any amount of sales and use taxes, interest or penalties that Defendants might assert to be due and owing from ICRR on its purchase or consumption of diesel fuel for rail transportation. *See* (Docket Entry No. 55 at 17).

The Court held a bench trial in this matter on June 5 and 11, 2012, after which the parties were instructed to file post-trial briefs.[2] Those briefs were filed on July 16, 2012.

Having reviewed the parties' briefs, the record, the exhibits received in evidence, and the testimony of the witnesses, after considering their interests and demeanor, the Court enters the following Findings of Fact and Conclusions of Law. Except where the Court discusses different testimony on a specific issue, any contrary testimony on a specific matter has been rejected in favor of the specific fact found. Further, the Court omits from its recitation facts that it deems to be immaterial to the issues presented.

## I. <u>FINDINGS OF FACT</u>

The parties have stipulated to many of the underlying facts in this matter.[3] Plaintiff Illinois Central Railroad Company ("Plaintiff" or "ICRR") is an Illinois corporation with its principal offices in Homewood, Illinois. ICRR is engaged in interstate commerce as a common carrier by railroad. (Docket Entry No. 1, Complaint, ¶ 5). ICRR is the corporate holding company for some of the U.S. properties of Canadian National Railway and is the entity that pays taxes in Tennessee. ICRR does business under the trade name CN, and CN is sometimes used to refer to the Plaintiff in this case.

The Tennessee Department of Revenue ("Department") is the department of the State of Tennessee charged with the responsibility to administer and collect sales and use taxes within Tennessee. Tenn. Code Ann. § 67-1-101(b). The Department is also charged with the responsibility to administer and collect motor fuel taxes within Tennessee. *Id*. Defendant Commissioner of Revenue of the State of Tennessee ("Commissioner," collectively with the

---

[2] The parties also filed pretrial briefs on May 29, 2012. *See* (Docket Entry Nos. 41 and 49). Notices of supplemental authority were filed on August 29, 2012 and July 2, 2013. *See* (Docket Entry Nos. 57 and 58).

[3] The Court admitted the stipulated facts at trial. *See* (Docket Entry Nos. 45 and 52).

Department, hereinafter referred to as "Defendants" or the "State") is named in this action in his official capacity only. The Commissioner exercises general supervision over administration of the assessment and collection of sales and use taxes and motor fuel taxes in Tennessee. The Tennessee Department of Transportation ("TDOT") is charged with building and maintaining public roads in Tennessee.

Cars, motorcycles, trucks (both large and small), cyclists, and pedestrians use roads. Generally, Tennessee imposes a tax on the sale, consumption, and use of tangible personal property in Tennessee. *See* Tenn. Code Ann. § 67-6-101 *et seq.* The sales tax is collected by the seller at retail from the purchaser and paid over to the Commissioner by the seller. *See* Tenn. Code Ann. §§ 67-6-502 -504.

Tennessee imposes a tax on the use, consumption, or storage for use or consumption of tangible personal property unless the sales tax on such property has been paid. Tenn. Code Ann. §§ 67-6-201(2) and (5), 67-6-202, and 67-6-203. Railroads are subject to sales or use tax on either their purchase or consumption or use of diesel fuel in Tennessee. For years 2006 to the present, the tax is imposed by the State at the rate of 7% of the retail price. (Complaint, ¶ 11). ICRR holds a direct pay permit issued by the Department and pays state sales and use taxes upon its purchase of diesel fuel within the State directly to the Commissioner.

The principal competitors to rail carriers in the transportation of property in interstate commerce in the State of Tennessee are on-highway motor carriers of property in interstate commerce ("motor carriers"). (Complaint, ¶ 13). Water carriers are secondary competitors to rail carriers in the transportation of property in interstate commerce in Tennessee. Motor carriers are exempt from the Tennessee sales and use tax imposed by chapter 6 of Title 67 on the purchase or

consumption of diesel fuel in the State of Tennessee; however, water carriers are not exempt. *See* Tenn. Code Ann. § 67-6-329(a)(2).[4]

Tennessee, along with the other 47 contiguous states and bordering Canadian provinces, is a party to the International Fuel Tax Agreement ("IFTA") the purpose of which is to simplify the collecting and reporting of taxes on motor fuel used by motor carriers operating in more than one jurisdiction. IFTA requires that the fuel use tax imposed by member jurisdictions be measured by the consumption of fuel in a motor vehicle. *See* 49 U.S.C. § 31701(2). The standard IFTA tax return shows tax rates for each member jurisdiction in terms of per-gallon or per-liter taxes. *See* (Rowen Depo., Exh. 4).

Fuel costs incurred in the transportation of property in interstate commerce are a significant annual operating expense of both rail carriers and motor carriers. For the years 2005 through 2010, fuel costs as a percentage of total operating expenses for railroads were 16.5, 19.8, 20.9, 25.8, 15.3 and 18.5, respectively. (Defendants' Tr. Exh. 7, Railroad Facts 2011, p. 61). The State of Tennessee has no control over the price of diesel fuel.[5]

Motor carriers pay a motor fuel tax totaling 18.4¢ a gallon. Tenn. Code Ann. § 67-3-202 - 205. Under Tenn. Code Ann. § 67-3-203 and 204, 1¢ of the 18.4¢ is a special privilege tax and .4¢ of the 18.4¢ is an environmental assurance fee. Approximately 70% of the motor fuel taxes collected from motor carriers are allocated to the highway fund, which is allocated to TDOT.

---

[4] Between 2007-2009, TDOT reported that it received less than $100,000 in sales and use taxes from water carriers. (Tr. Exh. 3, Multimodal Transportation Alternatives Status 2007 Annual Report, p. 4-4; Multimodal Transportation Status 2008 Annual Report, p. 4-3; TDOT Multimodal Transportation Resource Division 2009 Annual Report, p. 4-4).

[5] The Surface Transportation Board ("STB") classifies freight railroads into three classifications -- Class I, those with at least $398.7 million in operating revenue -- Class II, those with $31.9 million to $398.7 million in operating revenue -- Class III, those with less than $31.9 million in operating revenue. These thresholds are adjusted annually for inflation. The Class I railroads account for the majority of the U.S. rail freight activity, and since 1980 have been the only railroads required to report financial and operating information to the STB. Six Class I railroads operate in Tennessee. (Railroad Facts 2011, p. 3).

Approximately 28% is allocated to cities and counties and designated for use on roads. Approximately 2% is allocated to the general fund. In addition to the sales and use tax, railroads also pay the 1¢ and .4¢ tax imposed under Tenn. Code Ann. § 67-3-203 and 204.

In the tax years 2006 through 2010, ICRR paid the following amounts of Tennessee sales tax on its diesel fuel:

2006 $1,838,217

2007 $1,839,288

2008 $2,745,049

2009 $1,341,981

2010 $1,689,664.

In the tax years 2006 through 2010, ICRR paid the following amounts of property tax to cities and counties in Tennessee on its track structure, right of way, and signals:

2006 $1,885,344

2007 $2,148,995

2008 $2,418,641

2009 $2,581,751

2010 $2,517,645.

The parties have stipulated that ICRR is a "common carrier by railroad" within the meaning Section 306(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976, 49 U.S.C. § 11501.[6]

---

[6] ICRR owns its track and rights-of-way. No other railroad can operate trains over ICRR's track or rights-of-way without Plaintiff's permission. Approximately 20 - 25% of Plaintiff's business is intermodal -- containers that can move by rail, vessel, barge, or truck, or trailers that can move by rail or truck. (Jakubowski Depo., pp. 16-20). Every intermodal container or trailer that Plaintiff handles travels by truck at some point on its route. (*Id.*, pp. 15-20). Other products that move by rail, for example,

Plaintiff has pending in the Chancery Court for Davidson County, Tennessee, a refund action seeking a refund of all sales and use taxes paid on its purchases of diesel fuel in Tennessee from 2005 through 2010.

## II. CONCLUSIONS OF LAW

Plaintiff contends that the assessment, levy, and collection of a sales and use tax on its purchase or use of diesel fuel in Tennessee discriminates against rail carriers in violation of 49 U.S.C. § 11501(b)(4).

A. *CSX I* and *CSX II.*

The Court finds the U.S. Supreme Court's decision in *CSX Transp., Inc. v. Ala. Dep't of Revenue,* ⸺ U.S. ⸺, 131 S.Ct. 1101, 1105, 179 L.Ed.2d 37 (2011) ("*CSX I*") and the subsequent *CSX Transp., Inc. v. Ala. Dep't of Revenue,* 720 F.3d 863 (11th Cir. 2013) ("*CSX II*") decision by the Eleventh Circuit Court of Appeals, instructive in this case.  CSX filed a lawsuit against Alabama's Department of Revenue and its Commissioner in 2008, alleging Alabama's sales and use taxes discriminated against rail carriers under 49 U.S.C. § 11501(b)(4) because CSX's main competitors (motor carriers and water carriers) do not pay sales tax when they purchase diesel fuel, giving them a competitive advantage over CSX.[7]   Both the Supreme Court and the Eleventh Circuit Court of Appeals analyzed the challenge under Section (b)(4) for discrimination.  In *CSX I*, the Supreme Court held that a railroad may challenge a state's sales and use tax as "tax[es] that discriminat[e] against … rail carriers" under Section 11501(b)(4).

---

automobiles, may also move by truck at some point along the route.  Plaintiff has the ability to route cars on the open network of all Class I and all short line railroads in Tennessee (*Id.*, pp. 41-42).

[7] After the district court dismissed the complaint, the Eleventh Circuit Court of Appeals affirmed the dismissal based on their precedent in *Norfolk Southern Railroad Co. v. Alabama Department of Revenue,* 550 F.3d 1306, 1316 (11th Cir. 2008), which established the rule that a railroad could not challenge its competitors' exemptions from a sales tax as discriminatory under the 4-R Act.  *See CSX Transp., Inc. v. Ala. Dep't of Revenue*, 350 Fed. Appx. 318, 319 (11th Cir. 2009) (per curiam).  CSX appealed, and the Supreme Court granted certiorari, and overruled the Eleventh Circuit's decision in *Norfolk.*

The Supreme Court, however, declined to address the underlying merits of the challenge; specifically, "whether, [], Alabama's taxes in fact discriminate against railroads by exempting interstate motor and water carriers." *CSX I,* 131 S.Ct. at 1108. The case was remanded to the district court[8] and ultimately an appeal followed. The Eleventh Circuit Court of Appeals concluded,

> [i]n short, after establishing a comparison class of competitors and showing that its competitors did not pay the sales tax on diesel fuel purchases, CSX made a prima facie showing of discrimination under § 11501(b)(4). The burden shifted to the State to provide a "sufficient justification" for the exemptions. It did not. We reverse the district court, hold that the State's sales tax violates the 4-R Act, and remand to the district court with instructions to enter declaratory and injunctive relief in favor of CSX consistent with this opinion.

*CSX II,* 720 F.3d at 871.

B. Tennessee's Sales and Use Tax Violates the 4-R Act.

As recognized by the United States Supreme Court: "[R]ailroads are easy prey for state and local tax assessors in that they are nonvoting, often nonresident, targets for local taxation, who cannot easily remove themselves from the locality." *Dep't of Revenue of Or. v. ACF Indus., Inc.,* 510 U.S. 332, 336, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994) (internal quotation marks omitted). The Railroad Revitalization and Regulatory Reform Act of 1976 restricts the ability of state and local governments to levy discriminatory taxes on rail carriers. *CSX I,* 131 S.Ct. at 1105. Congress enacted the 4–R Act to "restore the financial stability of the railway system of the United States." *Id.*

Accordingly, the 4-R Act establishes that "[t]he following acts unreasonably burden and

---

[8] The district court conducted a bench trial and issued an order holding that the State's sales tax did not discriminate against CSX in violation of § 11501(b)(4). *See CSX Transp. Inc. v. Ala. Dep't of Revenue,* 892 F.Supp.2d 1300, 1317 (N.D. Ala. 2012). The district court reasoned that because the State's motor carriers paid a roughly equivalent amount in taxes pursuant to the State's fuel excise tax, the motor carriers' exemption from the sales tax was not discriminatory. *Id.* at 1313 (finding that the "tax rate imposed per gallon of diesel fuel for rail carriers and motor carriers is essentially the same").

discriminate against interstate commerce, and a State, subdivision of a State, or Authority acting

for a State or subdivision of a State may not:

> (1) Assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

> (2) Levy or collect a tax on an assessment that may not be made under paragraph (1) of this subsection.

> (3) Levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

> (4) Impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Board under this part."

49 U.S.C. § 11501(b).

Sections 11501(b)(1)-(3) prohibit "the imposition of higher assessment ratios or tax rates

upon rail transportation property than upon 'other commercial and industrial property.' " *ACF*

*Indus., Inc.,* 114 S.Ct. 843. Section 11501(b)(4) of the 4-R Act is broader and prohibits the

imposition of "another tax that discriminates against a rail carrier providing transportation." *Id.*

It is this provision that Plaintiff contends bars the State from assessing a sales and use tax on the

transportation fuel used by it.

  1. *The comparison class.*

Before the Court can assess the merits of Plaintiff's claim, it must first determine the

appropriate class for comparison. *CSX I*, 131 S.Ct. at 1107.

The Commissioner submits that the proper comparison class in "exemption-based

subsection (b)(4) challenges" is the class of all other commercial and industrial taxpayers that are

subject to the tax being challenged. (Docket Entry No. 41 at 6). Defendants continue, "[h]ere the sales and use tax applies to virtually all persons in Tennessee, obviously a ─large and local group of taxpayers, thereby marrying the fate of railroads to that of local Tennessee citizens who have both the incentive and the political clout to keep the sales and use tax as low as possible." (*Id.* at 7). Plaintiff counters that "the overwhelming weight of authority holds that the class of competitive modes of transportation is the appropriate comparison class where a tax on railroad diesel fuel that is not imposed on the fuel of competing transportation modes is challenged." (Docket Entry No. 55 at 7). In any event, Defendants concede that no matter how the comparison class is framed, the comparison class consists of motor carriers.

The proper approach toward defining the appropriate class for comparison under subsection (b)(4) has divided the circuits,[9] and the Supreme Court's most recent decision in this area, *CSX I,* declined to resolve the split. 131 S.Ct. at 1107 n. 5; *see id.* at 1115, 1118 n. 3 (Thomas, J., dissenting) (noting the division of authority); *Norfolk S. Ry. Co. v. Alabama Dep't of Rev.,* 550 F.3d 1306, 1308 n. 3 (11th Cir. 2008) (collecting cases), abrogated on other grounds by *CSX I,* 131 S.Ct. 1101.

---

[9] Courts are split on the issue of the proper "comparison class." *Compare CSX Transp., Inc. v. Ala. Dep't of Revenue,* Civil Action No. 2:08-cv-00655-UWC, slip op. at 6-7 & n.3 (N.D.Ala. July 8, 2008) (applying "competitive mode" comparison class, consisting of railroad's "direct competitors"), *and Union Pac. R.R. v. Minn. Dep't of Revenue,* 507 F.3d 693, 695 (8th Cir. 2007) (same), *and Ka. City S. Ry. v. Bridges,* No. 04-2547, 2007 U.S. Dist. LEXIS 23477, at *21-22 (W.D.La. Mar. 30, 2007) (same), *and Burlington N. R.R. v. Comm'r of Revenue,* 509 N.W.2d 551, 553 (Minn. 1993) (same), *with Burlington N. Santa Fe Ry. v. Monroe,* Civil Action No. 97-D-1754-N, slip op. at 21 (M.D.Ala. Aug. 10, 1998) (applying comparison class of other "commercial and industrial taxpayers"), *and Atchison, Topeka & Santa Fe Ry. v. Arizona,* 78 F.3d 438, 441 (9th Cir. 1996), *cert. denied,* 519 U.S. 1029, 117 S.Ct. 584, 136 L.Ed.2d 514 (1996) (same), *and Ka. City S. R.R. v. McNamara,* 817 F.2d 368, 375, 376 n. 15 (5th Cir. 1987) (same), *and Ala. Great S. R.R. v. Eagerton,* 541 F.Supp. 1084, 1086 (M.D.Ala. 1982) (same). The Supreme Court in dicta has applied the "other commercial and industrial taxpayers" category to challenges to state taxes under section (b)(4). *See Dep't of Rev. v. ACF Indus., Inc.,* 510 U.S. 332, 335, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994).

Under the first three subsections of the statute that deal exclusively with property taxes, Congress specifically provided a comparison class comprised of "other commercial and industrial property." 49 U.S.C. § 11501(b)(1–3). It did not provide such a comparison class for the catchall provision. *See* 49 U.S.C. § 11501(b)(4). As the Eleventh Circuit noted in *CSX II*, "[i]f [the court] compares[s] [Plaintiff] to all of the State's taxpayers, it is no worse off because most taxpayers pay the sales tax when they purchase diesel fuel. On the other hand, if [the court] compare[s] [Plaintiff] to motor [] carriers, questions of favorable treatment arise because they do not pay the sales tax." *CSX II,* 720 F.3d at 867. There are essentially "two camps" among our sister circuits: the functional approach and the competitive approach. *Id.* The Eleventh Circuit compared the two approaches as follows:

> Employing the functional approach, the Seventh and Ninth Circuits have compared the rail carriers to "other commercial and industrial" taxpayers based on § 11501(b)(4)'s three preceding subsections, which all contain the phrase "commercial and industrial." *Id. See also Kansas City S. Ry. Co. v. Koeller,* 653 F.3d 496, 508 (7th Cir. 2011), *cert. denied,* —— U.S. ——, 132 S.Ct. 855, 181 L.Ed.2d 551 (2011); *Atchison, Topeka & Santa Fe Ry. Co. v. Arizona,* 78 F.3d 438, 441 (9th Cir. 1996).[10]

> Contrarily, the Eighth Circuit has endorsed the narrower "competitive approach" model, at least when considering a state's sales tax. *See Union Pac. R.R. Co. v. Minn. Dep't of Revenue,* 507 F.3d 693, 695 (8th Cir. 2007); *Burlington N., Santa Fe Ry. Co. v. Lohman,* 193 F.3d 984, 986 (8th Cir. 1999) (choosing the competitive model, but acknowledging that "the comparison class should be appropriate *to the type of tax and discrimination* challenged in a particular case." (emphasis added)).[11]

---

10 In *Koeller,* the Seventh Circuit considered whether an Illinois subdivision's method of calculating taxes discriminated against railroads in violation of § 11501(b)(4). The court opted for the functional approach, in part because of "the need to read subsection (b)(4) in light of the approach taken in the first three subsections of the 4–R Act, which all directly or indirectly look to other commercial and industrial property." *Id.* at 509 (internal quotation marks omitted). Yet the Seventh Circuit also recognized that "there are *no* competitors of the railroads—motor carriers, air carriers, barges, [or] Great Lakes ships— that [the subdivision] is trying to tax." *Id.* (alteration in original) (emphasis in original) (internal quotation marks omitted). *See CSX II,* 720 F.3d at 867-868.

11 In *Lohman,* the Eighth Circuit addressed a scenario identical to the one before us: whether an exemption to Missouri's sales tax caused the sales tax to violate § 11501(b)(4). *Id.* (citing *Lohman*, 193 F.3d at 984). Furthermore, the court continued, if Congress "had wanted [§ 11501(b)(4)] to have the

Of the two approaches, if "too broad a comparison class is chosen, the railroads will be placed at a competitive disadvantage that would defeat the purpose of the statute." *Lohman,* 193 F.3d at 986. Nevertheless, a smaller class might "result in preferential treatment for the railroads," which Congress certainly did not intend. *CSX I,* 131 S.Ct. at 1109 n. 8; *id.* at 1119 (Thomas, J., dissenting).

In this case, there is a direct competitor of the railroad – the motor carrier. The Court has conducted a thorough review of the different approaches available to it, and "in light of the 4-R Act's purpose of ensuring 'financial stability' for rail carriers," the Court finds with respect to Tennessee's sales and use taxes at issue here, that a comparison class of competitors is more appropriate. *See CSX II,* 720 F.3d at 868.

2. *Discrimination.*

Having decided the appropriate comparison class, the Court must now determine whether the sales and use taxes for diesel fuel assessed against the railroad is discriminatory.

The "statute does not define 'discriminates,' and so [courts should] look [] to the ordinary meaning of the word." *CSX I,* 131 S.Ct. at 1108. Discrimination, the Court has said, is the "failure to treat all persons equally when no reasonable distinction can be found between those favored and those not favored." *Id.* (quoting Black's Law Dictionary 534 (9th ed. 2009)). *CSX I* did not offer further guidance on what constitutes discrimination in the present context. In *dicta,* however, the Court observed that "[w]hether the railroad will prevail—that is, whether it can prove the alleged discrimination—depends on whether the State offers a sufficient justification

---

same comparison class as the property tax subsections, and none other, it would have written it that way." *Id.*; *see also Atchison,* 78 F.3d at 445 (Nielsen, J., dissenting) ("If Congress wanted [§ 11501(b)(4)] to share the same broad comparison class as the three preceding subsections, and none other, it would have said so. It did not."). This result made sense, the court reasoned, because a broad comparison class in that instance would have put the railroads "at a competitive disadvantage." *Lohman,* 193 F.3d at 986. *See CSX II,* 720 F.3d at 868.

for declining to provide the exemption at issue to rail carriers." *Id.* at 1109 n. 8. In *ACF Industries,* the Court suggested another way to show discrimination under the 4–R Act's catch-all: discrimination might occur in a "case in which the railroads—either alone or as part of some isolated and target group—are the only commercial entities" subject to a tax. 510 U.S. at 346, 114 S.Ct. 843. In such a case, "one could say that the State had singled out railroad property for discriminatory treatment." *Id.* at 346–47, 114 S.Ct. 843.

In accordance with Title 67, Chapter 6 of the Tennessee, the State imposes a tax on the sale, consumption, and use of tangible property in Tennessee. The sales tax is a direct tax on the retail customer, and is precollected by retailers insofar as it can be done. *See* Tenn. Code Ann. § 67-6-502. Complementary to the sales tax, Tennessee imposes a use tax on the storage, use or consumption of tangible personal property in Tennessee. *See* Tenn. Code Ann. § 67-6-201(2) and (5). Under these provisions, railroads are subject to sales or use tax on their purchase or consumption or use of diesel fuel in Tennessee. The tax is imposed by the state at the rate of 7%. Tenn. Code Ann. § 67-6-202(1). The principal competitors of rail carriers, which are motor carriers, do not pay sales or use tax on the purchase or consumption of diesel fuel in the State of Tennessee. *See* Tenn. Code Ann. § 67-6-329(a)(2).

A two-step inquiry is used to evaluate a claim of discrimination in violation of § 11501(b)(4). *See CSX I,* 131 S.Ct. at 1109 n. 8. The plaintiff has the initial burden to establish a prima facie case of discriminatory tax treatment. If the plaintiff does so, the burden shifts to the defendant taxing authority to establish that the differential tax treatment is justified and does not discriminate against the railroad. *Id.* If the defendant cannot meet its burden, the tax treatment violates § 11501(b)(4). *Id.*

After electing to follow a competitive model in *CSX II*, the Eleventh Circuit held that CSX established a prima facie case of discrimination. Moreover, *CSX II* held, "[q]uite simply, the sales tax overburdens the rail carriers because its competitors do not pay it." 720 F.3d at 869. Similarly, given the tax scheme in the present case, it becomes Defendants' burden to justify their tax treatment against the railroads in Tennessee.

Defendants purport that the stipulated facts in this case demonstrate more than sufficient justification to treat railroads and motor carriers differently for purposes of taxing their purchase and use of diesel fuel. (Docket Entry No. 54 at 4). Defendants further contend "[f]rom 1941 through 2012, railroads have paid a higher tax per gallon than motor carriers have paid in only one year, when diesel fuel prices paid by railroads spiked in 2008." (*Id.* at 3, referencing Defendants' Tr. Exh. 10). Hence, "an exemption from the sales and use tax for railroads would have turned them into 'most-favored-taxpayers,' disavowed by *CSX [I]*." (*Id.*). The fact that motor carriers are subject to the higher motor fuel tax, Defendants opine, "is sufficient justification for their exemption from the less onerous sales and use tax to which railroads are subject." (*Id.*).

Plaintiff argues, in contrast, that the taxes paid on fuel by trucking companies are not directly comparable to the taxes paid on fuel by railroads, citing to the testimony of their expert, Benjamin Blair, the Director of U.S. Taxes for ICRR. (Docket Entry No. 55 at 10). The trucking companies' motor fuel tax applies on a consumption basis; the railroads' sales tax on diesel fuel for locomotives applies at the point of purchase. (*Id.*). The testimony and exhibit proffered by Benjamin Blair, Plaintiff continues, clearly established that the burden on railroads is higher because ICRR pays sales taxes on track materials used to build or maintain its rights of way, and pays property taxes on those rights of way – burdens which are not shared by the motor

carriers who receive maintained rights of way as a result of the motor fuel excise tax paid by them. (*Id.*, referencing Plaintiff's Tr. Exh. 28). The trucks do not pay property taxes on the highways and roads that they use, whereas ICRR is paying property taxes on its right of way. (*Id.*, Tr. Transcript p. 40). Plaintiff urges, "[t]he only reliable evidence in this record demonstrates that railroads carry a heavier tax burden than do their competitors." (*Id.* at 11).

Similar to the State in *CSX II*, Defendants here devote considerable effort to defending the motor carrier's exemption to the sales and use tax on the ground that the motor carriers pay a roughly equivalent amount of taxes under the motor fuel tax – and with the exception of one year, pay higher taxes. The Eleventh Circuit held, still, "[t]his argument misses the mark." *CSX II*, 720 F.3d at 869. As the Eleventh Circuit stated,

> If the 4-R Act required us to examine the tax regime for an entire commodity, it would have said so rather than speaking in the singular about "another tax."
>
> ***
>
> We therefore decline to undertake the Sisyphean burden of evaluating the fairness of the State's overall tax structure in order to determine whether a single tax exemption causes a state's sales tax to be discriminatory. This case, then, becomes much simpler than it would appear at first blush. Rail carriers pay the State's sales tax—motor carriers [] do not. It is not a sufficient justification for the State to counter that its tax code will ultimately level the playing field.
>
> Even if it were true that the exemptions at issue were not enacted to unfavorably target rail carriers, our decision would be the same because discrimination under § 11501(b)(4) "can be shown even if there is no direct evidence of targeting," as long as the tax imposes a proportionately heavier burden on rail carriers. *Koeller,* 653 F.3d at 510. Here, the rail carrier's main competitors have received favorable treatment: tax exemptions. In response, the State offers no "reasonable distinctions between the favored and the disfavored"; therefore it has failed to carry the burden set forth by the Supreme Court in *CSX [I]. Id.* In *CSX [I],* the Supreme Court queried the State: "Can you justify why motor [] carriers are taxed differently than rail carriers?" The State responds: "Motor [] are taxed differently because they are taxed differently." But the Supreme Court demanded a justification from the State, not a Zen proverb. Section 11501(b)(4) does not allow us to sit idly by and take the State at its word that, in the long run, its tax code will burden CSX no more than its competitors.

*Id.* at 870-871.

This Court finds a similar analysis justified here. Simply put, the record before the Court provides that rail carriers in Tennessee pay the State's sales and use tax, and motor carriers do not – placing rail carriers at an overall disadvantage. Defendants have not provided sufficient evidence that the differential tax treatment is justified and thus does not discriminate against the railroad. Consequently, because Defendants have not met their burden, the Court finds that the tax treatment violates 49 U.S.C. § 11501(b)(4). *See CSX I,* 131 S.Ct. at 1109 n. 8.

## III. CONCLUSION

On the basis of the foregoing, the Court finds that the sales and use tax assessments by Defendants against Plaintiff are discriminatory and therefore prohibited by Section 306(1)(d), 49 U.S.C. § 11501(b)(4).

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE